# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DAVID E. TURNER, | : | |
| Petitioner, | : | |
| | | Case No. 3:10cv00117 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| WARDEN, Chillicothe Correctional Institution,[1] | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| Respondent. | | |
| | : | |

# REPORT AND RECOMMENDATIONS[2]

## I. Introduction

Petitioner David E. Turner is incarcerated at the Chillicothe Correctional Institution, in Chillicothe, Ohio. (Doc. #5, Exhibit 14). His convictions are many: sixteen counts of pandering obscenity involving a minor and eight counts of gross sexual imposition involving a minor. His sentence consists of six years on each pandering obscenity conviction, five years on each gross sexual imposition conviction, with each term of imprisonment running concurrently with the others. (Doc. #5, Exhs. 14, 18). Turner's sentence also included the determination that he is "a TIER 2 sex offender/child victim under Ohio Rev. Code

---

[1] Robin Knab is the current Warden of the Chillicothe Correctional Institution in Chillicothe, Ohio.

[2] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

§2950.01." (Doc. #5, Exh. 14). And the sentencing judge's Termination Entry noted, "The Court advised the defendant of his requirement to register as a sex offender/child victim as defined by Ohio Revised Code 2950.04, 2950.041, 2950.05, 2950.06, and 2950.07...." (Doc. #5, Exh. 14 at 137).

Turner, through counsel, brings the present case challenging the constitutionality of his convictions and sentence. The case is presently before the Court upon Turner's Petition for Writ of Habeas Corpus (Doc. #2), Respondent's Motion to Dismiss (Doc. #5), Turner's Memorandum in Opposition (Doc. #6), and the record as a whole.

## II.     Background

### A.     Turner's Videos and Characterization

Turner videotaped instances when he spanked his minor son. He saved at least some of the videos on a home and/or laptop computer. According to Turner, the videos depict non-sexual, non-obscene disciplinary measures he took in response to his son's misbehavior. Turner emphasizes in the present case, as he did in the Ohio courts, "It is the contention of the Petitioner that the materials found on his family computer were in no way obscene. These materials were created in order to amplify the magnitude of punishment of Petitioner's child. Petitioner had done extensive research on the subject of child punishment and found that the video recording of the punishments increases the embarrassment and therefore protects against future acts of the same nature by the child...." (Doc. #2 at 7).

After watching the videos, law enforcement personnel in Montgomery County, Ohio

disagreed with Turner's characterization.

### B. Investigation and Trial Proceedings

Turner's problems with the Ohio criminal justice system began when Deputy Sheriffs conducted a warrantless search of an office in his home, from which they seized a computer tower. On several later occasions, Deputies conducted additional searches and seizures under the authority of warrants issued on July 6, 9, 10, and 16, 2007. (Doc. #5, Exh. 9 at 122, 125).

The Ohio Court of Appeals explained the circumstances surrounding those searches and seizures as follows:

> In July 2007, David Turner and his wife Diane, owned eight computers. Three of the computers, plus a laptop, were kept in an unlocked office on the first floor of the house. One computer in the office, a Macintosh, was used primarily by David. However, Diane also accessed the computer occasionally.
>
> On the evening of July 5, 2008, David was out of town on business. Some time prior to this evening, David and Diane had given a friend some used personal digital assistants (PDAs). While talking to the friend on the night of July 5, Diane learned that the friend had found video on David's PDA of two men engaged in homosexual sex. A website was listed at the end of the video, and when Diane accessed the website, she found that it was not a pornographic website, but appeared to be a website that sold software for making movies on the computer.
>
> Diane then went to the Turner's home office and looked at a Macintosh computer, which contained all the family finances. Diana [sic] had used this computer before, and the computer contained a folder entitled "Diane's stuff." When Diane clicked on the icon for the folder, she discovered about twenty files. Some were movies, and at least one was an audio file. The first file that Diane opened was an audio file, and it was a recording of their eleven-year-old son, J.T., crying. Diane then opened several more files and discovered a

3

>	movie of David bringing J.T. into the office and instructing him to remove his clothing.  David then told J.T. to bend over a step stool, and paddled him.  Another file showed J.T. naked and bent over David's knee, while David applied some type of clear oil onto J.T.'s buttocks.  David then caressed J.T.'s buttocks, and paddled him.  After accessing a third video showing their son being paddled while completely naked, Diane called a child abuse hotline, and then called the Montgomery County Sheriff's Office.  Diane was extremely upset about the content of the videos, and was also frightened, because her husband could access the computer remotely and that the ability to delete files.
>
>	When Deputy Chaney of the Montgomery County Sheriff's Office arrived, Diane invited him to come into the house.  Diane was visibly upset and was also concerned about the possibility of losing the information on the computer.  Diane took Chaney to the computer room, opened up one of the files and began to show him a video.  Diane identified the persons on the video as her husband and older son.  Chaney watched the video for a few moments and asked Diane to stop the video because it was disturbing and he thought it might be criminal in nature.  Chaney contacted his supervisor and asked him to come to the scene.
>
>	After Chaney's supervisor arrived, the officer's did not conduct a search of the home; they simply talked with Diane.  Diane signed a consent form allowing the officers to take a computer tower.  Although the consent form did not specify which computer was involved, the officers took the hard drive of the Macintosh computer.
>
>	The police subsequently obtained search warrants for additional computers and computer-type retaining items like thumb drives and memory cards.  The affidavit for the search warrants was based on information that Diane provided, which was quite detailed....

(Doc. #5 at 213-15)(footnote omitted).

A grand jury in state court indicted Turner, and later re-indicted him, on multiple criminal violations.  (Doc. #5, Exhs. 1, 7).  Before his trial began, Turner filed a motion (later two amended motions) to suppress challenging as unconstitutional the searches of his home and his computers.  Turner argued that probable cause did not support the searches,

4

that the Deputies lacked valid consent to search his home and to seize any property, and that no constitutionally valid search warrant justified the searches. (Doc. # 5, Exhs. 4, 5, 8).

In August 2007 the presiding judge held an evidentiary hearing concerning Turner's amended motion to suppress. Throughout the hearing Turner was represented by an attorney. In November 2007 the judge issued a detailed written decision denying Turner's amended motion to suppress. (Doc. # 5, Exh. 9). In doing so, the trial judge concluded that Diane Turner's consent supported the first warrantless search and seizure of evidence and valid search warrants supported the later searches and seizures. *Id*. This, in due course, led the trial judge to admit nine videos into the evidence presented to him during a bench trial. (Turner waived his right to trial by jury.)

After viewing all nine videos, and considering the parties' stipulations, the judge found Turner guilty of committing each indicted offense. (Doc. #5 at 406-10).

### C. State Appellate Proceedings

Turner filed a direct appeal of his convictions in the Ohio Court of Appeals. He asserted, in part, that the trial judge erred by denying his amended motion to suppress (1) the probable cause did not support the search warrants and (2) because the prosecution failed to prove that Diane Turner consented to the search of the computer hard drive where the videos were found. (Doc. #5, Exh. 16 at 148-56).

Turner also asserted the following Assignment of Error: "ALL THE CONVICTIONS SHOULD BE REVERSED BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A FINDING THAT [HE] WAS ENGAGED IN SEXUAL

5

CONTACT, OR THAT THE MATERIALS WERE OBSCENE[.]" (Doc. #5, Exh. 16 at 178) (capitalization in original)(bold removed).  In support of this Turner characterized the videos as depicting the following:

> All of the videos in this case were similar.  They showed Appellant's [Turner's] 11 year old son naked being spanked.  One video showed Appellant rubbing baby oil on his son's buttocks prior to the spanking.  Some of the videos showed Appellant, fully clothed, hugging his child after the spanking.  The videos did not show either Appellant or his son engaged in what would normally be called sexual activity.  There were no erections.  Appellant was always fully clothed.  There was not "unexplained" touching – no touchings of erogenous zones or genitalia other than the child's buttocks.  And only one video actually showed Appellant touching his son's buttocks with his hand.  The rest of the "touchings" were be means of a paddle.  Some of the videos also showed Appellant hugging his son after he had spanked him, but like any father might hug his child.  Nor did the videos focus on the naked child's genitalia – they simply recorded the spankings....

(Doc. #5, Exh. 16 at 178-79).  He then argued, in part, "The videos ... portray Appellant spanking his child then comforting the child afterward.  Again, Appellant is engaged in no outwardly sexual moves.  He remains clothed....  While people might legitimately condemn Appellant for inflicting corporal punishment, it is entirely a different matter to ascribe a sexual intent to actions that Appellant submits are not clearly of that ilk...."  (Doc. #5, Exh. 16 at 181).  Turner next quoted the sufficiency-of-evidence standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and argued, "Appellant submits that the evidence to support the convictions was insufficient  as a matter of law because the State failed to prove the elements of obscenity and sexual contact.  Accordingly, all the convictions should be reversed."  (Doc. #5, Exh. 16 at 182).

The Ohio Court of Appeals rejected each of Turner's arguments and affirmed his

convictions and sentence.  The Ohio Supreme Court declined Turner's request for review. (Doc. #5, Exh. 22).[3]

### III.  Discussion

#### A.  The Parties' General Contentions And The Applicable Standards

Turner's petition for writ of habeas corpus asserts various claims under five "Branches."  Respondent argues that for various reasons each Branch presents claims that are not cognizable in a federal habeas corpus action.

United States District Courts have the authority to grant a writ of habeas corpus to a prisoner who is state custody "in violation of the Constitution . . . of the United States."  28 U.S.C. §2241(a), (c)(3).  A writ of habeas corpus will issue under 28 U.S.C. §§2241 and 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), only if the petitioner establishes that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

---

[3]  Before seeking review in the Ohio Supreme Court, Turner had filed in state petition for writ of habeas corpus.  His petition was denied in January 2009, and Turner did not appeal.  (Doc. #5, Exhs. 23-26).

"A federal habeas court may not find a state adjudication to be 'unreasonable' 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Mills v. Cason*, 572 F.3d 246, 250 (6th Cir. 2009).

**B.    Branch I**

Turner's Petition asserts in Branch I, "The Petitioner's actions were an act of discipline, not sexual in nature and therefore the trial court's findings that the videos were obscene or of sexual activity were against the manifest weight of the evidence[.]..." (capitalization and bold removed).  Turner argues that the videos showed actions that were disciplinary in nature rather than sexual in nature, and consequently, the trial judge's findings that the videos depicted obscenity or sexual activity "were against the weight of the evidence."  (Doc. #2 at 7)(capitalization and emphasis removed).

Respondent contends that Branch I must be dismissed as raising a non-cognizable state-law claim rather than a federal constitutional claim.  Respondent argues:

> [T]he United States Supreme Court has held that arguing that a conviction is against the manifest weight of the evidence under state law is not enough to raise the federal constitutional aspect of the issue, since the federal standard does not correspond to the state evidentiary standard.  Therefore, Petitioner did not present a federal constitutional question to this court.

(Doc. #5 at 57) (citations omitted).  Respondent's argument is well taken, but it does not support a complete dismissal of Branch I.

To the extent Turner's asserts that his convictions were against the manifest weight of

8

the evidence, he raises a state-law claim. *See Tibbs v. Florida*, 457 U.S. 31, 41-47, 102 S.Ct. 221, 72 L.Ed.2d 652 (1982); *see also Terry v. Warden, Lebanon Correctional Inst.*, 2010 WL 4878934 at *6 (S.D. Ohio) (citing in part *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 546-48 (1997)); *see also Echols v. Houck*, 2005 WL 1745475 at *3 (S.D. Ohio, July 25, 2005).

To counter the complete dismissal of his manifest weight of the evidence claim Turner's Memorandum states:

> Federal courts have found that they may review procedurally defaulted claims if failing to review the claim would result in a fundamental miscarriage of justice. *Lundgren v. Mitchell*, 440 F.3d 754 (2006). Also it was stated in the petition[:]
>
>> Petitioner claims that the decision that placed him in prison is based upon a violation of his 14th Amendment right to due process. Petitioner claims that his conviction is against the manifest weight of the evidence presented at trial. It was unreasonable to find that Petitioner is guilty of the crime for which he is convicted.

*Petition for Writ of Habeas Corpus*, p. 11.[4]

> "[F]ederal habeas corpus relief does not lie for errors of state law," *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), such as evidentiary rulings, unless the rulings "rendered the trial so fundamentally unfair" that a denial of constitutional rights results. *Webster v. Rees*, 729 F.2d 1078, 1079-80 (6th Cir.1984) (citing *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982))."

---

[4] This is an incorrect cite; the quoted sentences appear on page 4 of the Petition (page 5 by the Court's CMECF system's pagination).

*Sutton v. Bell*, 2010 U.S. Dist. LEXIS 5292, 139 [sic][5]

> Branch I of the petition argues that the "obscenity" the court found in the evidence was not properly determined to be obscenity. Obscenity has been heavily structured under the case law covering the First Amendment to the U.S. Constitution. *Miller v. California*, 413 U.S. 15 (1973).

(Doc. #6 at 461)(footnotes added).

Turner's Memorandum thus finds its way back to his main points – that the videos were disciplinary in nature, the videos do not qualify as "obscene in nature," and a "father implementing a well studied and researched punishment to curb the unruly behavior of his child in no way carries the dominant appeal of a prurient interest." (Doc. #6 at 461-62).

None of these arguments convert Petitioner's manifest weight of the evidence claim into a sufficiency of the evidence claim. Petitioner is represented by counsel who chose to assert a manifest weight of the evidence claim and has at no time moved to amend his petition to set forth a sufficiency of the evidence claim. Accordingly, Turner's argument in Branch I that his convictions were against the manifest weight of the evidence presents a claim based on Ohio law that is not cognizable in the present federal habeas case.

### C. Branches II, III, and IV

Turner's Petition asserts:

### BRANCH II

THE EVIDENCE SHOULD HAVE BEEN ORDERED SUPPRESSED BECAUSE THE AFFIDAVITS IN SUPPORT OF THE SEARCH WARRANTS

---

[5] This case is found at 683 F.Supp.2d 640 (E.D. Tenn. 2010).

10

  FAILED TO PROVIDE SUFFICIENT PROBABLE CAUSE[.]

 ....

<u>BRANCH III</u>

 [HIS] FOURTH AMENDMENT RIGHTS WERE VIOLATED BY THE FAILURE OF THE TRIAL COURT TO SUPPRESS EVIDENCE BECAUSE THE PROSECUTION FAILED TO PROVE THAT [HIS] WIFE 'CONSENTED' TO THE SEARCH OF THE COMPUTER HARD DRIVE WHERE THE MATERIAL WAS DISCOVERED[.]

 ....

<u>BRANCH IV</u>

 [HE] WAS THE VICTIM OF AN ILLEGAL SEARCH AND SEIZURE WHEN THE OFFICERS SEARCHED THE HARD DRIVE[.]...

(Doc. #2 at 12-21)(capitalization in original; emphasis removed).

 Respondent contends that these claims are not cognizable in federal habeas corpus under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

 If the Ohio courts provided Turner with an "opportunity for full and fair litigation of a Fourth Amendment claim," his search-and-seizure claims are not cognizable in this federal habeas corpus case. *See Stone v. Powell*, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *see also Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000). Before Turner's trial his counsel filed a motion to suppress and two amended motions to suppress. (Doc. #5, Exhs. 4, 5, 8). A judge in the Montgomery County Court of Common Pleas held an evidentiary hearing in August 2007. Turner was represented by counsel throughout the hearing. Three witnesses testified: Diane Turner, who was married to David Turner at the time of the hearing (Doc. #5

11

at 301-46); Deputy Sheriff Mark Chaney, *id*. at 346-55; and Detective Brian Lewis, *id*., 356-66. During the hearing, Turner's counsel cross-examined and re-cross-examined Diane Turner. He also cross-examined Chaney and Lewis.

In November 2007 the trial judge issued a detailed written decision denying Turner's amended motion to suppress. (Doc. # 5, Exh. 9). After his trial and conviction, Turner appealed the denial of his amended motion to suppress. *Id*., Exh. 16. The Ohio Court of Appeal found no merit in Turner's arguments under either Ohio law or Fourth Amendment law. *Id*., Exh. 18.

In light of the proceedings in both the Court of Common Pleas and the Ohio Court of Appeals, the record conclusively establishes that the Ohio courts provided Turner with a full and fair opportunity to litigate his Fourth Amendment claims. The record of those proceedings also shows that Turner in-fact took the opportunity to litigate his claims, albeit unsuccessfully. For these reasons, his Fourth Amendment search-and-seizures claims are not cognizable in a federal habeas corpus case. *Stone v. Powell,* 428 U.S. at 481-82, 494-95; *see Seymour*, 224 F.3d at 553 ("Seymour does not, and cannot, claim that the State of Ohio did not provide her with a full and fair opportunity to litigate her Fourth Amendment claims; indeed, she did so in a suppression hearing before trial. Therefore, she cannot obtain habeas relief based on any alleged illegal search or seizure.").

Turner does not directly refute Respondent's reliance on *Stone v. Powell*. Turner does not refer to *Stone v. Powell* or to a federal habeas corpus case declining to apply *Stone v. Powell*. And Turner does not specifically contend that the Ohio courts failed to provide him with a full and fair opportunity to litigate his Fourth Amendment searches-and-seizure claims. The closest

12

he comes to the latter is by arguing, "In the Motion to Suppress, the trial judge [c]ut off Defendant counsel's line of questioning due to his belief that the words 'computer' and 'hard drive' were interchangeable." (Doc. #2 at 20-21). A review of the transcript from the motion to suppress hearing does not reveal any significant "cut-off" of questioning by Turner's counsel. Although the judge asked questions at certain points during the hearing, at no point did he stop or foreshorten defense counsel's questioning in any significant way. *See* Doc. #5 at 295-368. Turner, moreover, had the full and fair opportunity to litigate issues relating to what computer tower versus what computer hard drive the deputy Sheriffs removed from Defendant's home along with the issue of whether Diane Turner consented to the removal of the particular items seized. Nothing prevented Turner from fully litigating these issues in the trial court. And he litigated these issues, and other Fourth Amendment arguments, on appeal in the Ohio Court of Appeals. *See* Doc. # 5, Exh. 16 at 148-56. Turner has therefore failed to show that the Ohio courts failed to provide him with a full and fair opportunity to litigate his Fourth Amendment search-and-seizure claims.

Accordingly, his second, third, and fourth Branches are not cognizable in this federal habeas corpus action. *See Stone v. Powell,* 428 U.S. at 481-82, 494-95; *see also Seymour*, 224 F.3d at 553.

### D.    **Branch V**

Turner's claim in Branch V focuses on his sentence as a Tier 2 sex offender/child victim and its requirement that he register as a sex offender under Ohio Rev. Code §2950.01, upon his

13

release from incarceration. He asserts in habeas Petition, "for numerous reasons, the newly enacted reporting provisions for sex offenders violates several federal constitutional provisions[.]..." (Doc. #2 at 6-20)(capitalization and emphasis removed).

Respondent contends that dismissal of this claim is warranted because it is not cognizable in a federal habeas corpus action based on the reasoning of several cases. (Doc. #5 at 64-70). Turner does not attempt to distinguish these cases and does not address Respondent's arguments. (Doc. #6 at 464). He instead asserts that he "is entitled to relief on this Branch based upon his [c]onstitutional right to due process...." *Id.*

> "[t]he Sixth Circuit has held that a prisoner challenging the application of Ohio's sexual predator law, even a prisoner who is currently incarcerated, fails to satisfy the 'in custody' requirement necessary to obtain habeas relief. *See Leslie v. Randle*, 296 F.3d 518, 520-22 (6th Cir. 2002) (reasoning that Ohio's sexual-predator statute places no constraints on a person's movement or ability to engage in legal activities); *accord Cox v. Brunsman*, 2008 U.S. Dist. LEXIS 78799, 2008 WL 4185958, (S.D. Ohio Sept.5, 2008); *see also Thomas v. Morgan*, 109 F.Supp.2d 763, 767 (N.D. Ohio 2000) ('[T]he classification of a sex offender as a sexual predator is a collateral disability resulting from a conviction and thus does not satisfy the 'in custody' requirement of federal habeas corpus.')"

*Ragland v. Jackson*, 2009 WL 5194384 at * 9 (S.D. Ohio, Dec. 22, 2009)(King, M.J.)(quoting *Jones v. Beightler*, 2009 WL 1652131 (N.D. Ohio, June 10, 2009)); *see also Bevins v. Brunsman*, 2009 WL 5612338 at *12 (S.D. Ohio, Dec. 17, 2009)(Hogan, M.J.)(same). For these reasons, and in light of Turner's lack of counter-argument or citation to contrary case law, *see* Doc. # 7 at 464, his constitutional due process claim in Branch V is not cognizable in the instant case.

Accordingly, Respondent's Motion to Dismiss Branch V of the Petition is well taken.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's Motion to Dismiss (Doc. #5) be GRANTED;

2. David E. Turner's Petition for Writ of Habeas Corpus (Doc. #2) be DENIED and DISMISSED; and,

3. The case be terminated on the docket of this Court.


January 12, 2011

                                                    s/Sharon L. Ovington
                                                      Sharon L. Ovington
                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).